_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

JUN - 8 2020

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
*Plaintiff,*

v.                                      Civil Action No. 20-1180-CBD

JOSEPH WINDSOR SPEED,
*Defendant*

## MEMORANDUM

This Memorandum resolves a "Motion For Review Of Detention Order" (the "Appeal")
filed by defendant Joseph Speed on May 28, 2020.  ECF 15.  He challenges the ruling of U.S.
Chief Magistrate Judge Beth Gesner on May 20, 2020 (ECF 10), ordering his detention pending
trial.  The government opposes the appeal.  ECF 20.  Speed has not replied within the expedited
time informally established for appeals of this type.

The Appeal has been ably briefed, and no hearing is necessary to resolve it.  *See* Local Rule
105.6.[1]  For the reasons that follow, I shall deny the Appeal.

### I.    Procedural Background

On May 5, 2020, the Honorable Charles B. Day, United States Magistrate Judge, signed a
Criminal Complaint and Arrest Warrant for Joseph Speed.  ECF 1 (Sealed); ECF 2.  The Criminal
Complaint charges Speed with one count of conspiracy to distribute controlled substances, under
21 U.S.C. § 846, and one count of possession with intent to distribute controlled substances, under
21 U.S.C. § 841.  *Id.*

---

[1] Although the Bail Reform Act does not address whether a defendant is entitled to an in-
court hearing on an appeal of detention, Judge Grimm assessed the issue recently and found "ample
authority for the conclusion that the Court may decide the motion on the filings . . . as opposed to
a hearing."  *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17,
2020).

Speed had an initial appearance before Magistrate Judge A. Davis Copperthite via videoconferencing on May 15, 2020. ECF 5. The government moved for his detention and Judge Copperthite entered a temporary order of detention, pending a detention hearing set for May 20, 2020. ECF 8.

At the detention hearing, which was held via videoconference, Judge Gesner ordered Speed's detention. ECF 10. Applying the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), Judge Gesner found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the public if Speed was released. *Id.* Specifically, Judge Gesner observed that the nature and circumstances of offenses were serious: defendant was accused of possessing firearms and fentanyl on three separate occasions. *Id.* And, Judge Gesner observed that the weight of the evidence against Speed was significant, given seizures of contraband by the government and inculpatory social media posts by Speed. *Id.* Further, Judge Gesner found that Speed allegedly continued to engage in unlawful conduct after he knew the government had seized contraband from him. *Id.* Notably, Judge Gesner acknowledged the COVID-19 pandemic and defendant's medical conditions. *Id.* But, she concluded that these circumstances did not warrant his pretrial release. *Id.*

Speed is presently detained at Chesapeake Detention Facility ("CDF"). This Appeal followed on May 20, 2020. ECF 15.

## II.    Standard of Review

Ordinarily, a defendant should not be detained pending trial. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *accord United States v. Stone*, 608 F.3d 939, 945 (6th

Cir. 2010). The Bail Reform Act (the "Act"), 18 U.S.C. § 3141 *et seq.*, governs the release or detention of a defendant pending trial.

As is relevant here, the government may move for a defendant's pretrial detention if the case involves certain controlled substance offenses. *Id.* § 3142(f)(1)(C). If the court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). The test is disjunctive; a finding on either ground compels the defendant's detention. *See United States v. Salerno*, 481 U.S. 739, 754-55 (1987). But, the burden of proof differs: the government must establish that a defendant is a flight risk by a preponderance of the evidence, whereas the defendant's danger to the community must be proven by clear and convincing evidence. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

In deciding whether detention is necessary, the court "is not given unbridled discretion." *Salerno*, 481 U.S. 742. Rather, the Act directs the court to "take into account the available information concerning" four factors. 18 U.S.C. § 3142(g). Those factors include, *id.*:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

3

criminal history, and record concerning appearance at court
proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on
probation, on parole, or on other release pending trial, sentencing,
appeal, or completion of sentence for an offense under Federal, State,
or local law; and

(4) the nature and seriousness of the danger to any person or the community that
would be posed by the person's release. . . .

Of relevance here, when the defendant is charged with certain crimes there is a presumption

in favor of detention. Specifically, the Act creates a rebuttable presumption "that no condition or

combination of conditions will reasonably assure . . . the safety of the community if . . . there is

probable cause to believe that the person committed" one of an enumerated list of crimes,

including a crime carrying a maximum term of imprisonment of ten years or more under the

Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, or a violation of 18 U.S.C. 924(c). 18 U.S.C.

§ 3142(e)(2). For purposes of making that determination, "[a] grand jury indictment, by itself,

establishes probable cause to believe that a defendant committed the crime with which he is

charged." *Stone*, 608 F.3d at 945; *see United States v. Sheikh*, 994 F. Supp. 2d 736, 739 (E.D.N.C.

2014).

Once the presumption is triggered, "the burden of production shifts to the defendant to

come forward with evidence to suggest that the presumption is unwarranted in his or her particular

case." *United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007); *see also United States

v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). To do so, the defendant must proffer "at least

some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'"

giving rise to the presumption. *Stone*, 608 F.3d at 945-46 (quoting *United States v. Jessup*, 757

F.2d 378, 387 (1st Cir. 1985)). If the defendant offers evidence to counter the presumption, it

does not fall out of the picture entirely but rather remains a factor in the court's totality-of-the-

4

circumstances analysis. *See Stone*, 608 F.3d at 945; *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *Taylor*, 289 F. Supp. 3d at 64.

Section 3142(i) of the Act provides a distinct statutory basis for pretrial release. Under § 3142(i), the court may "permit the temporary release of [a] person" to "the custody of a United States marshal or another appropriate person," if the court determines that pretrial release is "necessary for preparation of the person's defense or for another compelling reason." As other courts have observed, claims predicated on § 3142(i) have historically involved claims that release was necessary for the preparation of the defendant's defense or where the defendant suffered from a serious medical condition. *See, e.g., United States v. Clark*, ___ F. Supp. 3d ___, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020); *United States v. Stephens*, ___ F. Supp. 3d ___, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See Stephens*, 2020 WL 1295155, at *3. Notably, courts have invoked § 3142(i) parsimoniously and only for truly extraordinary circumstances. *Compare United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993) (granting temporary release where the defendant had sustained a gunshot wound to the head and would "shortly die" from AIDS), with *United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (denying temporary release where the defendant disclosed that he had a hernia but did not explain why correctional authorities could not capably provide treatment). In the context of the COVID-19 pandemic, the Fourth Circuit has suggested that § 3142(i) requires evaluating whether "the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, . . . balanced against the other Bail Reform factors,

rises to the level of a 'compelling reason'" justifying release. *United States v. Creek*, CCB-19-36, App. No. 20-4251, at *1 (4th Cir. Apr. 15, 2020).

Of import here, the Act provides that a defendant "ordered detained by a magistrate judge, . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and "the motion  shall be determined promptly." *Id.* § 3145(b).  The district court reviews the magistrate judge's ruling *de novo* "and must make an independent determination of the proper pretrial detention or conditions of release." *Stewart*, 19 F. App'x at 48; *see also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).  In particular, the court must determine whether there are conditions of release that will reasonably assure the safety of the community.  In undertaking this examination, the court "'is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'" *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (citation omitted).

### III.    Discussion

Speed moves for reconsideration of his detention under 18 U.S.C. §§ 3145(b) and 3142(i). ECF 15 at 4-15.  Although he identifies no issue in Judge Gesner's ruling and does not dispute the presumption of detention, Speed contends that "any risk of danger to the community can be mitigated in this case by stringent release conditions, including home confinement." *Id.* at 4-5. Further, Speed urges the Court to invoke § 3142(i), arguing that the CDF is poorly equipped to prevent or control an outbreak of COVID-19 and that his medical conditions—asthma and pneumothorax—provide a compelling basis to release him on strict conditions. *See id.* at 7-14.

Having considered the relevant factors, I find that no condition or combination of conditions of release would reasonably assure the safety of the community pending trial. Further, I conclude that the current COVID-19 pandemic does not warrant Speed's release.

First, assessing the nature of the charges against Speed and the weight of the evidence, I agree with Judge Gesner that Speed poses a danger to the community if released. Speed is charged with conspiracy to distribute controlled substances and possession with intent to distribute controlled substances. Although serious, these are non-violent offenses. But, the conduct underlying the charges is deeply disturbing.

According to the government, "this case centers on three separate drug and gun seizures." ECF 20 at 2. First, on May 20, 2019, pursuant to a search warrant, law enforcement searched a Baltimore apartment that Speed was known to occupy. ECF 20 at 2. Among other incriminating evidence, law enforcement recovered more than a kilogram of suspected fentanyl, a loaded Glock semi-automatic handgun, drug-dealing paraphernalia, and a letter describing the rules of the Crips gang. *Id.* at 2-3. Then, on July 23, 2019, while Speed was driving in Pikesville, Maryland, he was stopped by plainclothes officers of the Baltimore County Police Department Narcotics Unit after a warrant check revealed that Speed had a suspended license and an outstanding arrest warrant for fleeing the police. *Id.* at 7. The officers arrested Speed after he provided a false identity, and a search incident to the arrest produced marijuana, a Glock 9mm handgun with an extended magazine, and 50 grams of fentanyl. *Id.* at 7, 11. Finally, on May 15, 2020, law enforcement executed a search warrant at Speed's residence in Pikesville, during which they recovered fentanyl, a Kel-Tec brand handgun, and a box of ammunition. *Id.* at 8. Notably, the government contends that ballistic analysis of the firearm recovered from Speed's residence linked the gun to an unsolved homicide. *Id.* at 11-12.

7

Speed disputes that the drugs recovered during the May 2019 search can be attributed to him, noting that at least two other individuals occupied the residence. ECF 15 at 5. Further, Speed denies that he is a member of the Crips and asserts that the government's allegedly corroborating evidence of his gang affiliation—a blue banana and Yankees baseball gear—is innocuous. *Id.* And, he points out that because he has no prior felony convictions, he was not prohibited from possessing firearms. *Id.* at 4.

These arguments are unpersuasive. Speed was found in July 2019 and May 2020 with the same type of drugs recovered from the apartment in May 2019. He has no rejoinder to the government's argument that one of the guns was linked to a homicide. And, according to the Pretrial Report created by U.S. Pretrial and Probation Services, Speed does not possess a license to lawfully possess a handgun. Consequently, the weight of the evidence against Speed is strong and counsels against his release.

Speed's history and characteristics also counsel in favor of detention. To be sure, Speed, who is 29 years old, has no history of violence. According to the Pretrial Report, Speed has strong ties to Baltimore and has been stably employed for much of his adult life. But, the Pretrial Report also demonstrates that Speed has difficulty following the law: he failed to appear at multiple State court proceedings and has one conviction for fleeing and eluding the police in 2019. In sum, Speed's past conduct does not favor release.

Like other judges in this district, I recognize the unique threat posed by the COVID-19 pandemic, the worst the world has experienced since 1918. *See United States v. Gray*, GJH-19-407, 2020 WL 1554392, at *1 (D. Md. Apr. 1, 2020); *United States v. Jefferson*, CCB-19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020); *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020). As of June 4, 2020, the coronavirus has infected over

8

1.8 million Americans and caused over 107,000 deaths.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed June 4, 2020).  Moreover, according to the Centers for Disease Control and Prevention  ("CDC"), asthma, chronic kidney disease, heart disease, and diabetes *each* increase the risk of complications from COVID-19.  *See Coronavirus Disease 2019 (COVID-19), At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

Moreover, I acknowledge that correctional facilities are ill-suited to prevent outbreaks and mitigate their spread.  *See, e.g., United States v. Goss*, 15-cr-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020).  Because there is no vaccine or treatment for COVID-19, the only way to slow the spread of the virus is to practice "social distancing."  *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).  However, social distancing is particularly difficult in the penal setting.  Therefore, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread.  *See* Letter from Johns Hopkins Faculty to Gov. Hogan (Mar. 25, 2020) (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 536 U.S. 493 519-20 (2011) (describing the overcrowded California prison system as "breeding grounds for disease").

Speed, who suffers from asthma and had two lung surgeries in 2019, is presently detained at CDF, which is managed by the Maryland Department of Public Safety and Correctional Services ("DPSCS").  ECF 77 at 6, 6 n.4.  According to the government, as of June 1, 2020, "it does not appear that there has been community spread of COVID-19 among the inmates at CDF."  ECF 20 at 19.  The government has detailed the substantial precautionary measures that DPSCS has

implemented at CDF to mitigate the possibility of an outbreak and to treat those detainees who fall ill. *Id.* at 7-10. Further, the government proffers that CDF has made substantial efforts to protect inmates and staff. *Id.* By contrast, Speed contends that there are six confirmed cases at CDF as of May 25, 2020. ECF 15 at 9. And, he contends that CDF is "ill-equipped" to control an outbreak of COVID-19. *Id.* at 10.

The Court does not minimize Speed's health concerns. However, as Judge Bennett recently determined, the "low number of infections, coupled with social distancing policies and other precautions taken by CDF, suggests that COVID-19 has been managed effectively." *United States v. Lawson*, RDB-9-665, 2020 WL 2848129, *5 (D. Md. June 2, 2020); *see also United States v. Thompson*, PWG-19-604, 2020 WL 2839095, at *3 (D. Md. June 1, 2020) (surmising that low number of cases at CDF was indicative that the State's preventative efforts are effective).

Moreover, as Judge Hazel of this Court has observed, "COVID-19 is not a virus that has specifically attacked the D.C. Jail"—it is a "global pandemic that all citizens of the world are struggling to combat." *Gray*, 2020 WL 1554392, at *2. Simply put, the coronavirus is "not tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.).

Ultimately, upon assessing the § 3142(g) factors in light of the pandemic, I find that Speed's medical conditions and the circumstances at CDF do not outweigh the serious nature of Speed's alleged conduct, the weight of the evidence, and Speed's criminal history. Accordingly, the pandemic does not serve as a "compelling reason" to grant Speed temporary release under § 3142(i). *See Creek*, No. 20-4251, at *1.

## IV.    Conclusion

For the reasons stated above, I shall affirm Judge Gesner's Order (ECF 10).  Therefore, I shall deny Speed's Appeal (ECF 15).

An Order follows, consistent with this Memorandum.


Date:   June 5, 2020                                    _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge

11